

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO
CIVIL DIVISION

LYNDSEY MIDDENDORF
3291 Ridgetop Way
Edgewood, KY 41017

:
:
:
:                    Case No.
:
:                    JUDGE
:
:
          Plaintiff,          :
                              :
                              :          COMPLAINT
v.                            :          & JURY DEMAND
                              :
                              :
ABUBAKAR ATIQ DURRANI, M.D.   :
Pakistan                      :
(Served via Hague Convention) :
                              :
And                           :
                              :
CENTER FOR ADVANCED SPINE     :
TECHNOLOGIES, INC.            :
(Served via Hague Convention) :
                              :
And                           :
                              :
WEST CHESTER HOSPITAL, LLC    :
7700 UNIVERSITY DRIVE         :
WEST CHESTER, OH 45069        :
                              :
SERVE: GH&R BUSINESS SVCS., INC. :
511 WALNUT STREET             :
1900 FIFTH THIRD CENTER       :
CINCINNATI, OH 45202          :
(Serve via Certified mail)    :
                              :
And                           :
                              :
UC HEALTH                     :
SERVE: GH&R BUSINESS SVCS., INC. :
511 WALNUT STREET             :
1900 FIFTH THIRD CENTER       :
CINCINNATI,OH 45202           :
(Serve via Certified mail)    :
                              :

1

**Defendants**.                    :

_____

Comes now Plaintiff, Lyndsey Middendorf, and files this Complaint and jury demand and states as follows:

1. At all times relevant, Plaintiff was a resident of and domiciled in the State of Kentucky.

2. At all times relevant, Defendant Dr. Abubakar Atiq Durrani (hereinafter "Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio.

3. At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio and Kentucky.

4. At all times relevant, West Chester Hospital, LLC (hereinafter "West Chester Hospital"), was a limited liability company authorized to transact business and perform medical services in the State of Ohio and operate under the trade name West Chester Hospital.

5. At all times relevant, Defendant UC Health Inc., was a duly licensed corporation which owned, operated and/or managed multiple hospitals including, but not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester.

6. At all times relevant herein, West Chester Medical Center, Inc., aka West Chester Hospital held itself out to the public, and specifically to Plaintiff, as a hospital providing competent and qualified medical and nursing services, care and

2

treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

7. UC Health is the corporate parent, owner and operator of West Chester Hospital, LLC.

8. The amount in controversy exceeds the jurisdictional threshold of this Court.

9. The subject matter of the Complaint arises out of medical treatment by Defendants in Butler County, Ohio. This Court is thus the proper venue to grant Plaintiff the relief sought.

## FACTUAL ALLEGATIONS OF PLAINTIFF

10. In the summer of 2008, Plaintiff was involved in a motor vehicle accident after which she was taken to St. Elizabeth South to undergo an x-ray of her injuries. Plaintiff was discharged and given pain medication for whiplash.

11. Plaintiff went back to her daily activities, but continued to experience radiating pain in her right arm and shoulder

12. Plaintiff sought treatment for the pain with her primary care physician, Dr. Jeff Janning, who referred her to Dr. Durrani.

13. Plaintiff's initial consult with Dr. Durrani took place at CAST. At this time, Dr. Durrani ordered a 3D CT scan at Proscan Imaging.

14. Around this same time, Plaintiff's parents sought a second opinion from Dr. Crawford at Cincinnati Children's Hospital. Dr. Crawford stated that Plaintiff did not need surgery.

CV
2014 07 1943
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

15. On December 2, 2009, Dr. Durrani performed surgery on the Plaintiff consisting of a posterior spinal fusion using auto allograft and pedicle screws at the C1-C2 level at West Chester Hospital.

16. Upon information and belief, Dr. Durrani used Infuse/BMP-2 or Puregen "off-label" in this surgery without Plaintiff's knowledge or consent, causing harm.

17. Following the surgery, Plaintiff experienced fainting spells for a short period of time. The pain in her right arm did go away after the surgery; however, within one week she began experiencing pain at the surgery site.

18. Plaintiff is no longer able to enjoy activities like sports and hobbies, which she used to be very involved.

19. Upon information and belief, the surgery performed by Dr. Durrani was medically unnecessary and improperly performed.

20. As a direct and proximate result of this surgery and Dr. Durrani's negligence, the Plaintiff has suffered harm.

21. Plaintiff did not become aware of Dr. Durrani's use of Infuse/BMP-2 until legal counsel reviewed Plaintiff's bills.

**INFUSE/BMP-2**

22. Dr. Durrani oftentimes used BMP-2 "off-label" when performing surgeries.

23. BMP-2 is manufactured, marketed, sold and distributed by Defendant Medtronic under the trade name "Infuse."

24. Dr. Durrani is a consultant for Medtronic.

25. Defendants did not inform Plaintiff of Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

4

26. Medtronic, provided in writing to Dr. Durrani and CAST the approved uses for BMP-2, the substance also referred to as Infuse, which is a bone morphogenic protein, used as an artificial substitute for bone grafting in spine surgeries.

27. BMP-2 is not approved by the Food and Drug Administration for use in the cervical and thoracic spine.

28. BMP-2 is neither safe nor approved for use on children less than twenty one (21) years of age.

29. For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited procedure, performed on a limited area of the spine, using specific components. Specifically, the FDA approved Infuse for one procedure of the spine: Anterior Lumbar Interbody Fusion ("ALIF" or "Anterior" approach); and only in one area of the spine: L4 to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE Lumbar Tapered Fusion Device Component ("LT-CAGE")

30. Use of Infuse in cervical or thoracic surgery, or use through the back (posterior), or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical spine), or using components other than or in addition to the LT-CAGE is not approved by the FDA, and thus such procedures and/or use of non-FDA approved componentry is termed "off-label."

31. When used off-label, Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can

experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

32. The product packaging for BMP-2/Infuse indicates it causes an increased risk of cancer four (4) times greater than other bone graft alternatives.

33. Dr. Durrani, CAST staff and employees, and West Chester/UC Health personnel did not disclose to Plaintiff their intent to use BMP-2/Infuse, and further, did not disclose their intent to use BMP-2/Infuse in a way not approved by the FDA.

34. Dr. Durrani used BMP-2 in Plaintiff in a manner not approved by Medtronic or the FDA.

35. Plaintiff was not informed by Defendants that Dr. Durrani used Infuse/BMP-2 in her surgery.

36. Plaintiff would not have allowed BMP-2 to be used by Dr. Durrani in her surgery in a manner that was not approved by the FDA or Medtronic, Infuse/BMP-2's manufacturer.

37. Plaintiff would not have consented to the use of BMP-2 in her body if informed of the risks by Dr. Durrani, CAST staff and employees, or any West Chester/UC Health personnel.

38. The written informed consent of Dr. Durrani and CAST signed by Plaintiff lacked the disclosure of Infuse/BMP-2's use in her procedures.

39. Plaintiff never received a verbal disclosure of Infuse/BMP-2 from Dr. Durrani, CAST staff and employees, or any West Chester/UC Health personnel.

40. Medtronic specifically required Infuse/BMP-2 only be used in "skeletally mature patients" with degenerative disc disease.

6

41. Medtronic required at least six (6) months of non-operative treatment prior to use of Infuse/BMP-2.

42. Dr. Durrani regularly used Infuse/BMP-2 without this six (6) month non-operative treatment.

43. Medtronic required BMP-2 always be used in conjunction with a metal LT cage.

44. Dr. Durrani regularly used BMP-2 without a proper LT cage in his surgeries.

## PUREGEN

45. Dr. Durrani oftentimes used Puregen when performing surgeries.

46. Puregen is a product produced by Alphatec Spine.

47. Dr. Durrani was and is a paid consultant for Alphatec Spine.

48. Dr. Durrani has an ownership stake in the Alphatec Spine.

49. Puregen has never been approved by the FDA for any human use.

50. Puregen is now removed from the market for any use.

51. Dr. Durrani used the product Puregen as bone graft substitute similar to Infuse/BMP-2 during spinal surgeries.

52. Dr. Durrani, CAST staff and employees, and West Chester/UC Health personnel did not disclose their intent to use Puregen, nor did they inform Plaintiff that it was a product that was not approved by the FDA for human use.

53. Dr. Durrani used Puregen in Plaintiff in manners not approved by the FDA.

54. Plaintiff was not informed by Dr. Durrani, CAST staff and employees, or any West Chester/UC Health personnel that Dr. Durrani used Puregen in her surgery.

55. Plaintiff would not have allowed Puregen to be used by Dr. Durrani in her surgery in a manner that was not approved by the FDA.

56. Plaintiff would not have consented to the use of Puregen in her body if informed of the risks by Dr. Durrani, CAST staff and employees, or any West Chester/UC Health personnel.

57. The written informed consent of Dr. Durrani and CAST signed by Plaintiff lacked the disclosure of Puregen's use in her procedures.

58. Plaintiff never received a verbal disclosure of Puregen from Dr. Durrani, CAST staff and employees, or any West Chester/UC Health personnel.

### DR. DURRANI COUNTS:

### COUNT I: NEGLIGENCE

59. Defendant Dr. Durrani owed his patient, Plaintiff, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

60. Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery, and improper follow-up care addressing a patient's concerns.

61. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant Dr. Durrani, Plaintiff sustained all damages requested in the Prayer for Relief.

### COUNT II: BATTERY

8

62. Dr. Durrani committed battery against Plaintiff by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent, inter alia, by using BMP-2, Puregen and/or Baxano in ways and for surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiff.

63. Plaintiff would not have agreed to the surgery if they knew the surgery was unnecessary, not approved by the FDA, and not indicated.

64. As a direct and proximate result of the aforementioned battery by Dr. Durrani, Plaintiff sustained all damages requested in the Prayer for Relief.

## COUNT III: LACK OF INFORMED CONSENT

65. The informed consent forms from Dr. Durrani and CAST which they required Plaintiff to sign failed to fully cover all the information necessary and required for the procedures and surgical procedures performed by Dr. Durrani. Dr. Durrani and CAST each required an informed consent release.

66. In addition, no one verbally informed Plaintiff of the information and risks required for informed consent at the time of or before Plaintiff's surgery.

67. Dr. Durrani failed to inform Plaintiff of material risks and dangers inherent or potentially involved with her surgery and procedures.

68. Had Plaintiff been appropriately informed of the need or lack of need for surgery and other procedures and the risks of the procedures, Plaintiff would not have undergone the surgery or procedures.

69. As a direct and proximate result of the lack of informed consent, Plaintiff sustained all damages requested in the Prayer for Relief.

**COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

70. Dr. Durrani's conduct as described above was intentional and reckless.

71. It is outrageous and offends against the generally accepted standards of morality.

72. It was the proximate and actual cause of Plaintiff's psychological injuries, emotional injuries, mental anguish, suffering, and distress.

73. Plaintiff suffered severe distress and anguish so serious and of a nature that no reasonable man or woman would be expected to endure.

**COUNT V: FRAUD**

74. Dr. Durrani made material, false representations to Plaintiff and their insurance company related to Plaintiff's treatment including: stating the surgery was necessary, that Dr. Durrani "could fix" Plaintiff, that more conservative treatment was unnecessary and futile, that the surgery would be simple or was "no big deal", that Plaintiff would be walking normally within days after each surgery, that the procedures were medically necessary and accurately reported on the billing to the insurance company, that the surgery was successful, and that Plaintiff was medically stable and ready to be discharged.

75. Dr. Durrani also concealed the potential use of Infuse/BMP-2 and/or Puregen in Plaintiff's surgery, as well as other information, when he had a duty to disclose to Plaintiff his planned use of the same.

76. These misrepresentations and/or concealments were material to Plaintiff because they directly induced Plaintiff to undergo her surgery.

77. Dr. Durrani knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred.

78. Dr. Durrani made the misrepresentations before, during and after the surgery with the intent of misleading Plaintiff and their insurance company into relying upon them. Specifically, the misrepresentations were made to induce payment by the insurance company, without which Dr. Durrani would not have performed the surgery, and to induce Plaintiff to undergo the surgery without regard to medical necessity and only for the purpose of receiving payment.

79. The misrepresentations and/or concealments were made during Plaintiff's office visits at Dr. Durrani's CAST offices.

80. Plaintiff was justified in their reliance on the misrepresentations because a patient has a right to trust their doctor and that the facility is overseeing the doctor to ensure the patients of that doctor can trust the facility.

81. As a direct and proximate result of the aforementioned fraud, Plaintiff did undergo surgery which was paid for in whole or in part by their insurance company, and suffered all damages as requested in the Prayer for Relief.

## COUNT VI: SPOLIATION OF EVIDENCE

82. Dr. Durrani willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, emails, billing records, paperwork and related evidence.

83. Dr. Durrani spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

11

84. Dr. Durrani's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## CAST COUNTS:

## COUNT I: VICARIOUS LIABILITY

85. At all times relevant, Defendant Dr. Durrani was an agent, and/or employee of CAST.

86. Dr. Durrani is in fact, the owner of CAST.

87. Defendant Dr. Durrani was performing within the scope of his employment with CAST during the care and treatment of Plaintiff.

88. Defendant CAST is responsible for harm caused by acts of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

89. Defendant CAST is vicariously liable for the acts of Defendant Dr. Durrani alleged in this Complaint including all of the counts asserted against Dr. Durrani directly.

90. As a direct and proximate result of Defendant CAST's acts and omissions, Plaintiff sustained all damages requested in the Prayer for Relief.

## COUNT II: NEGLIGENT HIRING, RETENTION, AND SUPERVISION

91. CAST provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

12

92. CAST and Dr. Durrani participated in experiments using BMP-2 and/or Puregen bone graft on patients, including Plaintiff, without obtaining proper informed consent thereby causing harm to Plaintiff.

93. CAST breached its duty to Plaintiff, inter alia, by not supervising or controlling the actions of Dr. Durrani and the doctors, nurses, staff, and those with privileges, during the medical treatment of Plaintiff at CAST.

94. The Safe Medical Device Act required entities such as CAST to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

95. Such disregard for and violations of federal law represents strong evidence that CAST negligently hired, retained, and supervised Dr. Durrani.

96. As a direct and proximate result of the acts and omissions herein described, including but not limited to failure to properly supervise medical treatment by Dr. Durrani, Plaintiff sustained all damages requested in the Prayer for Relief.

## COUNT III: SPOLIATION OF EVIDENCE

97. CAST, through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, emails, billing records, paperwork and related evidence.

98. CAST, through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

99. CAST's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## COUNT IV: OHIO CONSUMER SALES PRACTICES ACT

100.    Although the Ohio Consumer Sales Practices statutes O.R.C 1345.01 et seq. exempts physicians, a transaction between a hospital and a patient/consumer is not clearly exempted.

101.    CAST's services rendered to Plaintiff constitute a "consumer transaction" as defined in ORC Section 1345.01(A).

102.    CAST omitted suppressed and concealed from Plaintiff facts with the intent that Plaintiff rely on these omissions, suppressions and concealments as set forth herein.

103.    CAST's misrepresentations, and its omissions, suppressions and concealments of fact, as described above, constituted unfair, deceptive and unconscionable acts and practices in violation of O.R.C 1345.02 and 1345.03 and to Substantive Rules and case law.

104.    CAST was fully aware of its actions.

105.    CAST was fully aware that Plaintiff was induced by and relied upon CAST's representations at the time CAST was engaged by Plaintiff.

106.    Had Plaintiff been aware that CAST's representations as set forth above were untrue, Plaintiff would not have used the services of Defendants.

107.    CAST, through its agency and employees knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

108.    CAST's actions were not the result of any bona fide errors.

109.    As a result of CAST's unfair, deceptive and unconscionable acts and practices, Plaintiff has suffered and continues to suffer damages, which include, but are not limited to the following:

14

a. Loss of money paid

b. Severe aggravation and inconveniences

c. Under O.R.C. 1345.01 Plaintiff is entitled to:

CV

2014 07 1943

MAR? L SWAIN
BUTLER COUNTY
CLERK OF COURTS

    i. An order requiring that CAST restore to Plaintiff all money received from Plaintiff plus three times actual damages and/or actual/statutory damages for each violation;

    ii. All incidental and consequential damages incurred by Plaintiff;

    iii. All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

## WEST CHESTER HOSPITAL/UC HEALTH COUNTS:

### COUNT I: NEGLIGENCE

110.     West Chester Hospital/UC Health owed their patient, Plaintiff, through its agents and employees the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

111.     West Chester Hospital/UC Health acting through its agents and employees breached their duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery, improper assistance during Plaintiff's surgery and improper follow up care addressing a patient's concerns.

15

112.     The agents and employees who deviated from the standard of care include nurses, physician assistants, residents and other hospital personnel who participated in Plaintiff's surgery.

113.     The management, employees, nurses, technicians, agents and all staff during the scope of their employment and/or agency of West Chester Hospital/UC Health's knowledge and approval, either knew or should have known the surgery was not medically necessary based upon Dr. Durrani's known practices; the pre-op radiology; the pre-op evaluation and assessment; and the violation of their responsibility under the bylaws, rules, regulations and policies of West Chester Hospital/UC Health.

114.     As a direct and proximate result of the aforementioned negligence and deviation from the standard of care by the agents and employees of West Chester Hospital/UC Health, Plaintiff sustained all damages requested in the Prayer for Relief.

## COUNT II: NEGLIGENT CREDENTIALING, SUPERVISION, AND RETENTION

115.     As described in the Counts asserted directly against Dr. Durrani, the actions of Dr. Durrani with respect to Plaintiff constitute medical negligence, lack of informed consent, battery, and fraud.

116.     West Chester Hospital/UC Health negligently credentialed, supervised, and retained Dr. Durrani as a credentialed physician, violating their bylaws and JCAHO rules by:

16

a. Allowing Dr. Durrani to repeatedly violate the West Chester Hospital/UC Health bylaws with its full knowledge of the same;

b. Failing to adequately review, look into, and otherwise investigate Dr. Durrani's educational background, work history and peer reviews when he applied for and reapplied for privileges at West Chester Hospital;

c. Ignoring complaints about Dr. Durrani's treatment of patients reported to it by West Chester Hospital staff, doctors, Dr. Durrani's patients and by others;

d. Ignoring information they knew or should have known pertaining to Dr. Durrani's previous privileged time at other Cincinnati area hospitals, including Children's Hospital, University Hospital, Deaconess Hospital, Good Samaritan Hospital and Christ Hospital.

117. The Safe Medical Device Act required entities such as West Chester Hospital/UC Health to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

118. As a direct and proximate result of the negligent credentialing, supervision, and retention of Dr. Durrani, Plaintiff sustained all damages requested in the Prayer for Relief.

**COUNT III: FRAUD**

119. West Chester Hospital/UC Health sent out billing to Plaintiff at her home following her surgery at West Chester Hospital.

120. The exact dates these medical bills were sent out are reflected in those medical bills.

17

121.     These bills constituted affirmative representations by West Chester Hospital/UC Health that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

122.     The bills were sent with the knowledge of West Chester Hospital/UC Health that in fact Plaintiff's surgery was not appropriately billed and documented and that the services rendered at West Chester Hospital/UC Health associated with Dr. Durrani were not appropriate.

123.     The bills sent by West Chester Hospital/UC Health to Plaintiff falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

124.     West Chester Hospital/UC Health intentionally billed Infuse/BMP-2 and/or Puregen as "Miscellaneous" to prevent the discovery of the use of Infuse/BMP and/or Puregen by Plaintiff.

125.     Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgery at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for West Chester Hospital/UC Health's services in association with Dr. Durrani's surgery.

126.     As a direct and proximate result of this reliance on the billing of West Chester Hospital/UC Health, Plaintiff incurred medical bills that he otherwise would not have incurred.

127.     West Chester Hospital/UC Health also either concealed from Plaintiff facts they knew about Dr. Durrani, including that Infuse/BMP-2 or Puregen

would be used in Plaintiff's surgery, or misrepresented to Plaintiff the nature of the surgery, and the particular risks that were involved therein.

128.    West Chester Hospital/UC Health's concealments and misrepresentations regarding Infuse/BMP-2 or Puregen and the nature and risks of Plaintiff's surgery were material facts.

129.    Because of its superior position and professional role as a medical service provider, West Chester Hospital/UC Health had a duty to disclose these material facts to Plaintiff and a duty to refrain from misrepresenting such material facts to Plaintiff.

130.    West Chester Hospital/UC Health intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery, and thereby profited from the surgery and procedures Dr. Durrani performed on Plaintiff at West Chester Hospital/UC Health.

131.    Plaintiff was unaware that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgery and therefore, was unaware of the health risks of Infuse/BMP-2 or Puregen's use in Plaintiff's spine.

132.    Had Plaintiff known before Plaintiff's surgery that Infuse/BMP-2 or Puregen would be used in Plaintiff's spine and informed of the specific, harmful risks flowing therefrom, Plaintiff would not have undergone the surgery with Dr. Durrani at West Chester Hospital/UC Health.

133.    As a direct and proximate result of the fraud upon Plaintiff by West Chester Hospital/UC Health, Plaintiff sustained all damages requested in the prayer for relief.

**COUNT IV: SPOLIATION OF EVIDENCE**

134.    West Chester Hospital/UC Health through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, emails, billing records, paperwork and related evidence.

135.    West Chester Hospital/UC Health through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

136.    West Chester Hospital/UC Health's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

**COUNT V: OHIO CONSUMER SALES PRACTICES ACT**

137.    Although the Ohio Consumer Sales Practices statutes O.R.C 1345.01 et seq. exempts physicians, a transaction between a hospital and a patient/consumer is not clearly exempted.

138.    West Chester Hospital/UC Health's services rendered to Plaintiff constitute a "consumer transaction" as defined in ORC Section 1345.01(A).

139.    West Chester Hospital/UC Health omitted suppressed and concealed from Plaintiff facts with the intent that Plaintiff rely on these omissions, suppressions and concealments as set forth herein.

140.     West Chester Hospital/UC Health's misrepresentations, and its omissions, suppressions and concealments of fact, as described above, constituted unfair, deceptive and unconscionable acts and practices in violation of O.R.C. 1345.02 and 1345.03 and to Substantive Rules and case law.

141.     West Chester Hospital/UC Health was fully aware of its actions.

142.     West Chester Hospital/UC Health was fully aware that Plaintiff was induced by and relied upon West Chester Hospital/UC Health's representations at the time West Chester Hospital/UC Health was engaged by Plaintiff.

143.     Had Plaintiff been aware that West Chester Hospital/UC Health's representations as set forth above were untrue, Plaintiff would not have used the services of Defendants.

144.     West Chester Hospital/UC Health, through its agency and employees knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

145.     West Chester Hospital/UC Health's actions were not the result of any bona fide errors.

146.     As a result of West Chester Hospital/UC Health's unfair, deceptive and unconscionable acts and practices, Plaintiff has suffered and continues to suffer damages, which include, but are not limited to the following:

a.   Loss of money paid

b.   Severe aggravation and inconveniences

c.   Under O.R.C. 1345.01 Plaintiff is entitled to:

21

    i. An order requiring West Chester Hospital/UC Health restore to Plaintiff all money received from Plaintiff plus three times actual damages and/or actual/statutory damages for each violation;

    ii. All incidental and consequential damages incurred by Plaintiff;

    iii. All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

## COUNT VI: PRODUCTS LIABILITY

147. At all times Infuse/BMP-2 and Puregen are and were products as defined in R.C. § 2307.71(A)(12) and applicable law.

148. West Chester Hospital/UC Health (aka supplier) supplied either Medtronic's (aka manufacturer) Infuse/BMP-2 or Alphatec Spine's (aka manufacturer) Puregen for surgery performed by Dr. Durrani on Plaintiff.

149. West Chester Hospital/UC Health, as a supplier, failed to maintain either Infuse/BMP-2 or Puregen properly.

150. West Chester Hospital/UC Health did not adequately supply all components required to use either Infuse/BMP-2 or Puregen properly.

151. West Chester Hospital/UC Health knew or should have known the FDA requirements and Medtronic's requirements for using either Infuse/BMP-2 or Puregen.

152. West Chester Hospital/UC Health stored either Infuse/BMP-2 or Puregen at its facility.

153. West Chester Hospital/UC Health ordered either Infuse/BMP-2 or Puregen for surgery performed by Durrani.

154.    West Chester Hospital/UC Health did not adequately warn Plaintiff that either Infuse/BMP-2 or Puregen would be used without all FDA and manufacturer required components.

155.    West Chester Hospital/UC Health did not gain informed consent from Plaintiff for the use of either Infuse/BMP-2 or Puregen, let alone warn of the supplying of the product without FDA and manufacturer requirements.

156.    West Chester Hospital/UC Health intentionally billed Infuse/BMP-2 and/or Puregen as "Miscellaneous" to prevent the discovery of the use of Infuse/BMP and/or Puregen by Plaintiff.

157.    West Chester Hospital/UC Health failed to supply either Infuse/BMP-2 or Puregen (aka product) in the manner in which it was represented.

158.    West Chester Hospital/UC Health failed to provide any warning or instruction in regard to either Infuse/BMP-2 or Puregen, and failed to make sure any other party gave such warning or instruction.

159.    Plaintiff suffered physical, financial, and emotional harm due to West Chester Hospital/UC Health's violation of the Ohio Products Liability act. Plaintiff's injuries were a foreseeable risk

160.    Plaintiff did not alter, modify or change the product, nor did Plaintiff know that the product was being implanted without all required components.

161.    West Chester Hospital/UC Health knew or should have known that the product was extremely dangerous and should have exercised care to provide a warning that the product was being used and that the product was being used

23

outside FDA and manufacturer requirements. The harm caused to Plaintiff by not

providing an adequate warning was foreseeable,

162.     West Chester Hospital/UC Health knew that the product did not conform

to the representation of the intended use by the manufacturer yet permitted the

product to be implanted into Plaintiff.

163.     West Chester Hospital/UC Health, as a supplier, acted in an

unconscionable manner in failing to supply the product without all FDA and

manufacturer required components.

164.     West Chester Hospital/UC Health, as a supplier, acted in an

unconscionable manner in failing to warn Plaintiff that the product was being

supplied without all FDA and manufacturer required components.

165.     West Chester Hospital/UC Health's actions demonstrate they took

advantage of the Plaintiffs inability, due to ignorance of the product, to

understand the product being implanted without FDA and manufacturer required

components.

166.     West Chester Hospital/UC Health substantially benefited financially by

the use of the product as the product allowed for West Chester Hospital/UC

Health to charge more for the surgery.

167.     Plaintiff suffered economic loss as defined in R.C. § 2303.71(A)(2) and

applicable law.

168.     Plaintiff suffered mental and physical harm due to West Chester

Hospital/UC Health's acts and omissions.

169.    Plaintiff suffered emotional distress due to acts and omissions of West Chester Hospital/UC Health and is entitled to recovery as defined in R.C. § 2307.71(A)(7) and applicable law.

170.    West Chester Hospital/UC Health violated the Ohio Products Liability Act R.C. § 2307.71-2307.80

171.    West Chester Hospital/UC Health violated R.C. § 2307.71(A)(6)

172.    West Chester Hospital/UC Health violated The Ohio Consumer Sales Practices Act R.C. § 1345.02-.03.

173.    West Chester Hospital/UC Health provided inadequate warnings are defined in R.C, § 2307.76(A) and applicable law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests and seeks justice in the form and procedure of a jury, verdict and judgment against Defendants on all claims for the following damages:

1.    Past medical bills;

2.    Future medical bills;

3.    Lost income and benefits;

4.    Lost future income and benefits;

5.    Loss of ability to earn income;

6.    Past pain and suffering;

7.    Future pain and suffering;

8.    Plaintiff seeks a finding that their injuries are catastrophic under Ohio Rev. Code §2315.18;

25

9.      Plaintiff seeks all relief available under the Ohio Products Liability Act R.C. §

2307.71-2307.80 and applicable law;

10.     All incidental costs and expenses incurred as a result of their injuries;

11.     The damages to their credit as a result of their injuries;

12.     Punitive damages;

13.     Costs;

14.     Attorneys' fees;

15.     Interest;

16.     All property loss;

17.     All other relief to which they are entitled including O.R.C. 1345.01

Based upon 1-17 itemization of damages, the damages sought exceed the minimum

jurisdictional amount of this Court and Plaintiff seeks in excess of $25,000.

Respectfully Submitted,

Stephanie Collins (#0089945)
*Attorney for Plaintiff*
5247 Madison Pike
Independence, KY 41051
859-363-1900 Fax: 859-363-1444

**JURY DEMAND**

Plaintiff makes a demand for a jury under all claims.

Stephanie Collins (#0089945)

26